Sonya Ann SCANLON, Plaintiff—
Appellant,

v.

The BOEING COMPANY, a Delaware
corporation doing business in the
State of Washington, Defendant—Ap-
pellee.

No. 01–35505.

D.C. No. CV–00–00969–BJR.

United States Court of Appeals,
Ninth Circuit.

Submitted July 12, 2002.*

Decided Oct. 3, 2002.

Before HALL, TASHIMA, and
RAWLINSON, Circuit Judges.

MEMORANDUM **

Sonya Ann Scanlon appeals from an or-
der granting summary judgment in favor
of The Boeing Company in an action aris-
ing from Scanlon's termination as an em-
ployee of Boeing in September 1999.
Scanlon's complaint alleged that Boeing
laid her off because of unlawful disability
discrimination and in retaliation for her
complaints in 1996 that Boeing was requir-
ing her to work during unpaid lunch
breaks.

---

* This panel unanimously finds this case suit-
able for decision without oral argument. See
Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publi-
cation and may not be cited to or by the
courts of this circuit except as provided by
Ninth Circuit Rule 36–3.

## I.

■ To defeat summary judgment on a discrimination claim under the Americans with Disabilities Act ("ADA"),[1] a plaintiff must present sufficient evidence from which the trier of fact could rationally conclude: (1) that she was a disabled person within the meaning of the ADA; (2) that she was qualified with or without reasonable accommodation to perform the essential functions of the job; and (3) that the defendant terminated her because of her disability. *See Broussard v. Univ. of Cal., at Berkeley*, 192 F.3d 1252, 1255 (9th Cir.1999). There is no dispute that Scanlon was disabled at the time of her layoff or that she was terminated because of her disability. The sole dispute in Scanlon's discrimination claim concerns whether Scanlon could perform the essential functions of her job at the time of her dismissal. Scanlon concedes that she was unable to climb ladders, but claims that this is not an essential function.[2] We agree with the district court that this is indeed an essential function as a matter of law and Scanlon's admitted inability to perform it requires that summary judgment be granted in favor of Boeing.

The confined space monitor position exists in order to ensure the safety of employees working in a confined space by, among other things, ensuring a rapid response to any emergency that might arise. When a potential emergency does come up, monitors must occasionally perform a quick investigation of the situation of employees within confined spaces to determine their status. Some of these spaces are only reachable by ladder.

A 1994 job description by Boeing lists climbing ladders as an essential job function. A 1999 review of the position by an independent organization sponsored by the labor union representing Scanlon also concluded that climbing ladders is an essential function. Scanlon, herself, declared that the "primary function" of her job was to "check on workers inside fuel tanks and call for help in the event I determine that a worker is in trouble." In deposition, Scanlon admitted that there have been times when the only way to check on a worker's safety is to climb a 50–60 foot ladder, which she usually asked a worker on the floor to do for her.

Scanlon has offered no evidence that would allow the trier of fact to rationally conclude that climbing ladders is not an essential function. Her assertion by affidavit that climbing ladders is not an essential function of her job is clearly contradicted by her own deposition testimony discussed above. *See Foster v. Arcata Assoc., Inc.*, 772 F.2d 1453, 1462 (9th Cir. 1985) (Appellant cannot "create his own issue of fact by an affidavit contradicting his prior deposition testimony".). Likewise, Scanlon's expert's assertion that a monitor need not climb ladders because "she can just yell louder" is pure speculation. The expert's assertion is clearly contradicted by Scanlon herself when she stated in deposition that she has been faced with situations where yelling even with a megaphone is inadequate because "[i]t's really a noisy area. And sometimes they'd be way back in there, or something, and they couldn't hear you."

1. The district court also granted summary judgment for Boeing on Scanlon's claim of disability discrimination under Washington law. In this Court, Scanlon did not claim that the district court erred in its ruling concerning Washington law.

2. Scanlon does not contend that, if Boeing prevails on this question, there is a "reasonable accommodation" that will enable her to perform the function at issue, climbing ladders.

Scanlon's contention that ladder climbing is not an essential function because she can usually find a worker on the facility floor to climb the ladder for her is not relevant. The fact that other Boeing workers often will go out of their way by performing an essential function of Scanlon's job does not change the nature of that function.

The fact that Boeing may have accommodated Scanlon in the past does not create a triable issue that climbing ladders is an essential function of her job. The fact that, at one point, an employer accommodated an employee in a manner that is not required by federal law does not mean that the accommodation then somehow becomes mandated by federal law. *See Kees v. Wallenstein*, 973 F.Supp. 1191, 1195 (W.D.Wash.1997), *aff'd* 161 F.3d 1196 (9th Cir.1998).

Finally, Boeing's decision to continue to over-accommodate three employees with the same disability as Scanlon is not relevant to the essential functions of Scanlon's position.

### III.

To establish a prima facie case of retaliation, an employee must show that: (1) she engaged in a protected activity; (2) the employer subjected her to an adverse employment decision; and (3) there is a causal connection between the protected activity and the adverse decision. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir.2002). There is no dispute that Scanlon can prove the first two elements of this claim. Scanlon engaged in protected activity in 1996 by complaining about unpaid lunch breaks. She was fired in 1999. The only issue is whether Scanlon can show a causal connection between her 1996 complaints and her 1999 firing. We agree with the district court and conclude that Scanlon has not presented sufficient evidence from which the trier of fact could rationally conclude that Scanlon was fired in 1999 because of her 1996 complaints.

Scanlon's firing occurred well over two years after her complaints. We recently concluded that eighteen months was too long a lapse to give rise to any inference of causation. *Id.* at 1065. Scanlon admitted in deposition that the person who initiated the medical review process and decided to terminate her had no retaliatory animus towards her. Furthermore, the fact that three others with the same medical restrictions as herself were not laid off with her in 1999 does not tend to show that Scanlon was laid off because of her 1996 complaints.

The district court's grant of summary judgment in favor of Boeing is AFFIRMED.